UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBERT LETELL                                    CIVIL ACTION

VERSUS                                           NO.   15-5008

JAMES LEBLANC, NATHAN CAIN                       SECTION "I"(4)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.   Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.   *See* 28 U.S.C. §2254(e)(2) (2006).[1]

## I.   Factual and Procedural Background

The petitioner, Robert Letell ("Letell"), is a convicted inmate incarcerated in the Avoyelles Correctional Center in Cottonport, Louisiana.[2]   On February 22, 2010, Letell was charged by Bill of Information in Lafourche Parish with one count of fourth offense operating a vehicle while intoxicated, one count of vehicular homicide, and three counts of first degree vehicular negligent injury.[3]   The State entered a nolle prosequi on the negligent injury charges.[4]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

[3] St. Rec. Vol. 1 of 16, Bill of Information, 2/22/10.

[4] *Id.*

The record reflects that on February 18, 2010, at approximately 4:00 p.m., Willie Joseph Galliano, Sr., was killed when his vehicle was struck by Letell's white Ford F250 truck on Louisiana Highway 308 in Lafourche Parish.[5]   Galliano was thirty-eight years old at the time of his death.   He left behind four children, and his wife was pregnant with their first son.

Frances Louise Addison's vehicle was also struck by Letell's truck during the incident. She was driving through a curve headed southbound on La. Highway 308 with her two children, and saw Letell's white Ford truck heading northbound.   The truck was speeding excessively and out of control.   The truck hit Addison's vehicle "broadside."   Her vehicle flipped and rolled over landing on its wheels.   Addison saw a white male driving and no one else in the truck.

Trisha Bourque Lombas was driving northbound on La. Highway 308 and had her four children in the car.   The speed limit was 55 miles per hour, but Lombas was driving approximately five miles faster.   A white pickup truck approached her from the rear, traveling at "a crazy speed," and almost rammed the rear of her vehicle.   Lombas saw the driver of the truck in her driver's side mirror and identified Letell in court and at the scene as the driver.

Lombas increased her speed to avoid contact with Letell's truck.   Letell attempted to pass her, but another vehicle was headed towards them in the southbound lane.   Letell pulled back behind Lombas's vehicle to avoid a head-on collision.   He soon drove up to the rear of Lombas's vehicle, and she again sped up to avoid being hit.   Letell then moved to pass Lombas's vehicle as they headed into a curve, forcing the vehicle headed southbound to go off into the grass to avoid a head-on collision.   She saw Letell at the accident scene after she stopped to help a woman and

---

[5]The facts were taken from the published opinion of the Louisiana First Circuit Court of Appeal.   *State v. Letell*, 103 So.3d 1129, 1134-36 (La. App. 1st Cir. 2012); St. Rec. Vol. 14 of 16, 1st Cir. Opinion, 2012-KA-0180, pp. 3-5, 10/25/12.

2

child whose vehicle had been struck by the truck.  Letell was on the ground next to the open driver's door of the white truck holding his stomach and crying.

Tommy Mayet was driving southbound on La. Highway 308 shortly before the incident. When Mayet entered a curve traveling about 40 miles per hour, he saw a light-colored Ford F250 pickup truck traveling in the northbound lane at "a very, very high rate of speed."   The truck went off the road, and Mayet anticipated the truck would overcorrect and possibly hit him. The truck did exactly as Mayet predicted and "barely missed" striking his vehicle.   Following the collision with Galliano's vehicle, Mayet saw Letell lying down on the ground by the truck.

Louisiana State Troopers Keith Gros, Jr., and Dawn Celestine investigated the crash scene following the incident. Trooper Gros found yaw marks left by the defendant's truck, consistent with the vehicle spinning out of control.   Trooper Celestine found tire marks in Letell's lane of travel indicating that his truck had driven off the roadway.   The point of impact with Galliano's vehicle was in the southbound lane.

Trooper Celestine also spoke to Letell in the hospital on the day of the incident. He had a strong odor of alcohol on his breath.   He initially claimed that, at approximately noon on the day of the incident, he stopped at an unknown gas station and was carjacked by a black male, who took control of his vehicle.   Letell stated that he drank a pint of vodka to calm his nerves and could not remember what happened thereafter.   After Trooper Celestine confronted Letell with the witness accounts, Letell stated that he must have been driving "if that is what the witness said."   He also stated that he killed a man and should "receive the same punishment the man I killed got."

Louisiana State Trooper Michael Lynn Satcher also visited Letell at the hospital on the day of the incident.   He too detected an odor of alcohol on Letell's breath.   Trooper Satcher performed a horizontal gaze nystagmus test on Letell, and Letell failed the sobriety test.   Because

Letell was involved in an accident with a fatality, he was required to submit to blood-alcohol testing.   Additionally, Trooper Satcher indicated he twice advised Letell of his *Miranda* rights, once when he initially met Letell, and again when he read Letell the rights relating to the chemical test for intoxication form.   Letell refused to sign the form.   When his blood was drawn at 7:04 p.m., the blood-alcohol content was .22 grams percent.   At the time of the incident, Letell was on parole related to a prior conviction for fourth-offense DWI.

After being found competent to proceed,[6] Letell was tried before a jury on September 14 through 16, 2011, and found guilty as charged fourth offense DWI and vehicular homicide.[7]   On October 18, 2011, the Trial Court denied Letell's post-trial motions, including those for new trial and post-verdict judgment of acquittal.[8]   After waiver of legal delays, the Trial Court sentenced Letell on the fourth offense DWI to thirty (30) years in prison without benefit of parole, probation, or suspension of sentence and a $5,000 fine plus court costs.[9]   The sentence was ordered to be served consecutive to the sentence on the prior fourth offense DWI for which his parole was revoked in a separate proceeding.[10]   On the vehicular homicide charge, the Court sentenced Letell to serve a consecutive term of thirty (30) years in prison with a $5,000 fine plus court costs.   The

---

[6]See for example, St. Rec. Vol. 8 of 16, Dr. Salcedo's Report, 8/4/11.

[7]St. Rec. Vol. 1 of 6, Trial Minutes, 1/25/10; Trial Minutes, 1/26/10; Trial Minutes, 1/27/10; Jury Verdict, 1/27/10; St. Rec. Vol. 2 of 6, Trial Transcript, 1/25/10; Trial Transcript, 1/26/10; St. Rec. Vol. 3 of 6, Trial Transcript (continued), 1/26/10; Trial Transcript, 1/27/10.

[8]St. Rec. Vol. 4 of 16, Sentencing Transcript, pp. 7, 8, 9, 11-12, 10/18/11; St. Rec. Vol. 9 of 16, Motion for New Trial, 9/21/11; Motion for Post-Verdict Judgment of Acquittal, 9/21/11; Pro Se Motion for Post-Verdict Judgment of Acquittal, 10/3/11.

[9]*Id.*, at pp. 16-17; St. Rec. Vol. 9 of 16, Commitment Order, 10/18/11.

[10]St. Rec. Vol. 13 of 16, Parole Revocation Transcript, No. 482950, 8/11/10.

first five years of the sentence was to be served without benefit of parole, probation, or suspension of sentence.   The Court also denied his motion to reconsider the sentence.[11]

On direct appeal to the Louisiana First Circuit Court of Appeal, Letell's appointed appellate counsel asserted two errors:[12] (1) the Trial Court erred in denying trial counsel's motion to withdraw based on a conflict of interest created by Letell's bar complaint; and (2) the sentences were excessive and amounted to double jeopardy.   Letell filed a pro se supplemental brief in which he asserted five issues:[13] (1) the Trial Court erred in denying him the right to self-representation and to present his own defense under *Faretta v. California*, 422 U.S. 806 (1975); (2) the Trial Court erred in denying him the right to testify to address the inculpatory statements; (3) the Trial Court erred in denying the motion to suppress the blood-alcohol test for lack of maintenance certificates on the testing machine; (4) the Trial Court erred when it allowed the prosecutor to mispresent material facts, alter documents, and coerce witnesses to perjure themselves; and (5) the Trial Court erred when it denied the motion to suppress the confession/statements taken during the illegal detention.

On October 25, 2012, the Louisiana First Circuit affirmed Letell's convictions and sentences finding no merit in the claims raised and finding pro se issue for it was not preserved under La. Code Crim. P. art. 841 and La. Code Ev. art. 103(A)(1).[14]   The Louisiana Supreme Court denied Letell's related writ application without stated reasons on April 26, 2013.[15]

---

[11]St. Rec. Vol. 9 of 16, Motion to Reconsider Sentence, 10/20/11; Trial Court Order, 10/21/11.

[12]*State v. Letell*, 103 So.3d at 1129; St. Rec. Vol. 14 of 16, 1st Cir. Opinion, 2012-KA-0180, 10/25/12.

[13]St. Rec. Vol. 2 of 16, Pro Se Appeal Brief, 12-KA-180, dated 6/14/12.

[14]*State v. Letell*, 103 So.3d at 1129; St. Rec. Vol. 14 of 16, 1st Cir. Opinion, 2012-KA-0180, 10/25/12.

[15]*State v. Letell*, 112 So.3d 838 (La. 2013); St. Rec. Vol. 13 of 16, La. S. Ct. Order, 2012-KO-2533, 4/26/13. The Court obtained a copy of the writ application and it has been separately filed into the record.

His conviction was final under federal law ninety (90) days later, on July 25, 2013, when he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the United States Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

On October 21, 2013, Letell signed and submitted an application for post-conviction relief to the Trial Court in which he asserted multiple grounds of ineffective assistance of counsel,[16] prosecutorial misconduct,[17] denial of due process and the right to a fair trial by the state trial judge,[18] and denial of due process by the state clerk of court.[19]

---

[16]St. Rec. Vol. 14 of 16, Application for Post-Conviction Relief, 10/24/13 (dated 10/21/13).  Letell asserted that trial counsel (1) withheld his medical records which contained exculpatory evidence, (2) did not respond truthfully to the Office of Disciplinary Counsel, (3) withdrew from representation without filing a motion to withdraw as counsel, (4) conceded to the State's case in his closing argument, (5) opened the door to prejudicial testimony by failing to stipulate to the three prior DWI offenses, (6) refused to argue the details of petitioner's pro se motion to suppress evidence the blood tests and statements, (7) failed to impeach Trooper Dawn Celestine's testimony, (8) went to trial while a motion to quash/amend the bill of information was pending, (9) went to trial while a motion to change venue was pending, (10) allowed the evidence "to be most favorable to the State to obtain this illegal conviction," (11) refused to object and get transcripts in proper order, (12) failed to object and argue the lack of probable cause, use of perjured testimony, and prosecutorial misconduct, (13) failed to argue the details of the motion to suppress identification, (14) failed to impeach the State's witnesses with the prior inconsistent statements, (15) failed to submit into evidence that John Shutt's nursing license had expired and he was not qualified to draw blood, (16) moved for mistrial based on Letell's behavior rather than the prosecutor's misconduct, (17) failed to report the prosecutor to the Office of the Disciplinary Board, and (18) denied petitioner the right to testify on his own behalf.

[17]*Id*.  Letell claims that the prosecutor (1) had Troopers Celestine and Satcher alter the time on the arrestee's form, (2) was dishonest when he said that petitioner sought review of the denial of the motion to quash/amend the bill of information, (3) failed to disclose a deal it made with Patricia Lombas, (4) failed to comply with the discovery requests, and (5) violated the Rules of Professional Conduct.

[18]*Id*.  The claims of denial of due process by the state trial judge are that he (1) would not resolve pending motions before petitioner went to trial, (2) violated petitioner's right to cross-examine witnesses, (3) allowed criminal conduct to occur in his courtroom and had petitioner forcefully removed from the courtroom during the proceedings for trying to expose the criminal activity, (4) told petitioner he would be convicted, (5) told petitioner that he would have to hire counsel to get effective assistance, (6) violated the Canons of the Judicial Commission, (7) failed to uphold the integrity of the Rules of Professionalism, and (8) failed to recuse himself when he could not be fair and impartial and conduct a fair trial.

[19]*Id*.  Letell claims that the clerk (1) had someone remove his motion to quash/amend the bill of information and for change of venue from the official record, alter the court's minutes from the October 15, 2010, hearing, and alter the chronological index to reflect that the missing motion was not filed on September 16, 2010, and (2) had or allowed someone take remove "state exhibit #19, the new altered arrestee's rights form" filed by the prosecutor and sent petitioner a copy of the original form instead of the new, missing form.

After receiving procedural objections from the State asserting that the claims were resolved by the direct appeal, on December 12, 2013, the Trial Court ordered that the claims be dismissed.[20] Letell timely sought review of this ruling in the Louisiana First Circuit and later withdrew the application.[21]

In spite of the dismissal, on July 17, 2014, the State filed an answer and supporting memorandum addressing "the hodge-podge allegations that are not clearly dismissed pursuant to the prior judgment" and seeking dismissal of any remaining claims as meritless.[22] Letell filed a myriad of responses to the State's answer, along with a number of writ applications to the Louisiana First Circuit and the Louisiana Supreme Court mostly seeking directives to the trial court to issue a ruling.[23] Letell's efforts were unsuccessful and the Trial Court entered no other rulings on his original application for post-conviction relief.

On review of the Trial Court's original dismissal of the post-conviction application, the Louisiana Supreme Court eventually denied Letell's related writ application on September 11, 2015, on procedural grounds citing La. Code Crim. P. art. 930.4(A), as repetitive of matters addressed on appeal.[24]

---

[20]St. Rec. Vol. 15 of 16, Notice, 12/12/13; State's Procedural Objections, 12/2/13. The record does not contain a copy of a separate court order. Letell submitted a response to the State's memorandum after the Trial Court denied relief. St. Rec. Vol. 15 of 16, 12/20/13.

[21]St. Rec. Vol. 15 of 16, Copy of 1st Cir. Writ Application, dated 1/21/14; 1st Cir. Order, 2014-KW-0076, 5/7/14.

[22]St. Rec. Vol. 11 of 16, State's Answer, 7/17/14; Memorandum in Support, 7/17/14.

[23]*See e.g.*, St. Rec. Vol. 15 of 16, Response to State's Answer, 8/1/14; Motion for Ruling, 8/12/14 (dated 8/7/14); Trial Court Order, undated (filed 8/12/14); Motion for Response to State's Answer, 8/29/14 (dated 8/27/14); Notice, 8/28/14; 1st Cir. Order, 2014-KW-1240, 10/3/14; 1st Cir. Order, 2014-KW-1241, 10/6/14; Response to State's Answer, 10/2/14; St. Rec. Vol. 16 of 16, La. S. Ct. Order, 2014-KH-2060, 9/11/15 (denying relief pursuant to La. Code Crim. P. art. 930.4(A)).

[24]*State ex rel. Letell v. State*, 176 So.3d 1034 (La. 2015); St. Rec. Vol. 16 of 16, La. S. Ct. Order, 2014-KH-2060, 9/11/15; St. Rec. Vol. 15 of 16, Copy of La. S. Ct. Writ Application, dated 9/30/14. The Louisiana Supreme Court references Louisiana First Circuit Writ No. 2014-KW-0999 which is not in the record.

In the interim, on January 19, 2015, Letell submitted a Supplemental Memorandum in support of his original application for post-conviction relief in which he urged his original post-conviction claims and arguments.[25]   On February 5, 2015, the Trial Court denied the application restating the reasons given in the prior notice of its ruling and the Louisiana First Circuit's reasons on direct appeal, and noting that the claims asserted in the supplemental application were repetitive and untimely.[26]   For the same reasons, on March 3, 2015, the Trial Court denied Letell's request for leave to amend the already dismissed application.[27]

Letell apparently sought unsuccessful review of the Trial Court's ruling in the Louisiana First Circuit, and his Louisiana Supreme Court writ application remains pending in that Court.[28]

## II.   __Federal Habeas Petition__

On June 22, 2015, the Clerk of the United States District Court for the Western District of Louisiana filed Letell's petition for federal habeas corpus relief in which he raised the following grounds for relief:[29] (1) the Louisiana First Circuit ruled contrary to and unreasonably applied *Blockburger v. United States*, 284 U.S. 299 (1932) to resolve his claims of double jeopardy when it relied on the "same evidence" test; (2) the Louisiana First Circuit did not adjudicate the self-representation claim under the correct, prevailing jurisprudence in *Faretta*; (3) the Louisiana First Circuit unreasonably applied the Supreme Court precedent on the issue of the State's failure to

---

[25]St. Rec. Vol. 16 of 16, Supplemental Memorandum, 1/22/15 (dated 1/19/15); St. Rec. Vol. 15 of 16, Motion for Leave, 1/22/15.

[26]St. Rec. Vol. 15 of 16, Trial Court Order, 2/5/15.

[27]St. Rec. Vol. 16 of 16, Trial Court Order, 3/5/15; Trial Court Order, 3/2/15; Request for Leave to Amend, 2/26/15.

[28]St. Rec. Vol. 16 of 16, La. S. Ct. Letter, 2015-KH-1523, 8/10/15.   The State failed to provide a copy of the writ application to the Louisiana First Circuit and the Louisiana Supreme Court.   A member of my staff contacted the Louisiana Supreme Court to confirm that this writ application is still pending.

[29]Rec. Doc. No. 1.

allow petitioner to testify; and (4) the Louisiana First Circuit failed to apply the prevailing and controlling principles of the attorney conflict of interest doctrine.   In his subsequent pleadings, Letell further argued that the state trial court unreasonably denied him the right to self-representation for improper reasons while also denying his request to have counsel withdraw due to the conflict of interest.[30]

After transfer of the case to this Court,[31] the State filed an answer and memorandum in opposition to Letell's petition in which it conceded timeliness and exhaustion.[32]   The State argues that Letell's claims are without merit and fail to establish that the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court law.

In his reply to the State's opposition, Letell argues that he has set forth grounds entitling him to relief.[33]   He also contends that his clear and unequivocal declaration that he be allowed to represent himself was rejected by the state trial court which improperly relied on the conclusion that Letell was not competent to represent himself.

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[34] applies to this petition, which is deemed filed in this Court under the federal

---

[30]Rec. Doc. No. 15-1.

[31]Rec. Doc. Nos. 8, 9.

[32]Rec. Doc. No. 17.

[33]Rec. Doc. No. 20.

[34]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. □2254, and applied to habeas petitions filed after its effective date, April 24, 1996.   *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).   The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.   Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.   *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

mailbox rule on June 15, 2015.[35]   The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."   *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

As indicated above, the State concedes and the record reflects that Letell's petition was timely filed, he has exhausted state court review, and none of the claims are in procedural default to prevent federal review.   The Court will proceed to review of the merits of his claims.

## IV.   <u>Standards of Review on the Merits</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, establishes a standard of review governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).   It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court

---

[35]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of the Western District of Louisiana docketed Letell's federal habeas petition on June 22, 2015, when it was received, and the case was opened on July 30, 2015, when the filing fee was paid.   Letell signed his petition on June 15, 2015, and this is the earliest date appearing in the record on which he could have submitted the pleadings to prison officials for mailing to a federal court.   The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if the filing fee is not paid at time of mailing) (citing *Spotville*, 149 F.3d at 376).

findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.   28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.   The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.   The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."   *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).   "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"   *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.   *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.   A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts.   *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.   *See Williams*, 529 U.S. at 410.

The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.   *Id.*   "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"   *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."   *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).   The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.   *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits.   *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.   **Analysis**

### A.   **Double Jeopardy**

Letell asserts that the Louisiana First Circuit ruled contrary to and unreasonably applied *Blockburger*, 284 U.S. at 299 when it relied on the "same evidence" test to deny him relief on his claim that his sentences for both DWI fourth offense and vehicular homicide exposed him to double jeopardy.   The State responds that the state courts reached the correct conclusion that he was not subject to double jeopardy and Letell is not entitled to relief.

Letell's appointed counsel first raised this issue on direct appeal.   The Louisiana First Circuit recognized two double jeopardy tests, the *Blockburger* test and the "same evidence" test.

Following Louisiana law, the Court applied the same evidence test to determine whether the evidence at trial proved both crimes.   The Court held that the evidence required to prove vehicular homicide would not support a conviction of fourth offense DWI, and Letell had not been subject to double jeopardy.   This was the last reasoned opinion on the issue where the Louisiana Supreme Court denied the related writ application without stated reasons.   *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

A double jeopardy claim raises a mixed question of law and fact for purposes of this Court's federal habeas review.   *Carlile v. Cockrell*, 51 F. App'x 483, 2002 WL 31319380, at *1 (5th Cir. 2002) (applying the AEDPA's mixed question standard to a double jeopardy claim); *Johnson v. Karnes*, 198 F.3d 589, 593 (6th Cir. 1999) (same).   The Court must consider whether the state court's denial of relief was contrary to or an unreasonable application of Supreme Court law.

The Double Jeopardy Clause of the Fifth Amendment protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.   *Brown v. Ohio*, 432 U.S. 161, 165 (1977).   Under the third prong, as urged by Letell's, punishment for the same offense is determined by "whether each provision requires proof of an additional fact which the other does not."   *Brown*, 432 U.S. at 166 (quoting *Blockburger*, 284 U.S. at 304).

In *Blockburger*, the United States Supreme Court determined that if each charged offense contains an element that is not contained in the other, the charges are <u>not</u> considered to be the same offense and are <u>not</u> barred under the Double Jeopardy Clause.   *See Blockburger*, 284 U.S. at 304. To meet this test, the Court must "compare the criminal statutes at issue and inquire whether each

provision requires proof of an additional fact that the other does not." *United States v. Singleton*, 16 F.3d 1419, 1442 (5th Cir. 1994) (citing *Blockburger*, 284 U.S. at 304); *United States v. Fisher*, 106 F.3d 622, 632 (5th Cir. 1997) ("Double jeopardy concerns are not raised if each crime charged requires an element of proof the other crimes charged do not."); *accord Bias v. Ieyoub*, 36 F.3d 479, 480 (5th Cir. 1994).

In this case, Letell was charged in 2010 under two distinct statutes with fourth offense DWI in violation of La. Rev. Stat. Ann. § 14:98(A)(1), (E) (West 2010) and vehicular homicide in violation of La. Rev. Stat. Ann. § 14:32.1 (West 2010).   Both charges arose from or occurred in the same car accident which resulted in Galliano's death.

At the time, fourth offense DWI under § 14:98(A)(1) was defined in relevant part as the operation of a motor vehicle when (a) the operator was under the influence of alcoholic beverages or (b) the operator's blood alcohol concentration was .08% or more and the operation had three prior DWI convictions.  *State v. Perry*, 985 So.2d 771, 775(La. 1st Cir. 2008).   For a fourth offense driving while intoxicated, the State must show the operator had three other valid DWI convictions.   La. Rev. Stat. Ann. § 98(E) (West 2010); *State v. Delanueville*, 90 So.3d 15, 20 (La. 5th Cir. 2012).

At the time, La. Rev. Stat. Ann. § 14:32.1(A), in relevant part, defined vehicular homicide as "the killing of a human being caused proximately or cause directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle . . . whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exists and such condition was a contributing factor to the killing: (1) The operator is under the influence of alcoholic beverages . . .; (2) The operator's blood alcohol concentration is 0.08 percent or more

…; (4) The operator is under the influence of alcoholic beverages." *State v. Kenny*, 116 So.3d 992, 996 (La. App. 4th Cir. 2013).

Considering these factors, to prove that Letell committed a fourth offense DWI, the State must have shown that he was operating the truck while under the influence of alcohol or with a blood alcohol concentration ("BAC") of .08% or higher and had already received three DWI convictions.   To prove the vehicular homicide, the State had to prove that Letell killed Galliano while he was operating the truck under the influence of alcohol or with a BAC of .08% or higher and the alcohol influence or BAC was a contributing factor to the killing.

The burden of proof on the State demonstrates that these crimes each required the State to prove distinct elements in order to achieve a conviction.   For example, the vehicular homicide did not require the State to prove that Letell had three prior DWI convictions, an element required for a conviction of fourth offense DWI.   The fourth offense DWI charge did not require the State to prove that Letell killed Galliano or that his alcohol influence or his BAC caused or contributed to the death of Galliano, both key elements of proving vehicular homicide.

Thus, under Louisiana law, "each provision requires proof of an additional fact that the other does not."   *Singleton*, 16 F.3d at 1442 (citing *Blockburger*, 284 U.S. at 304).   This is the same conclusion reached by the Louisiana First Circuit in resolving Letell's direct appeal.[36]

Considering the foregoing, Letell has not established that the two charges violated the prohibition against double jeopardy or that the state courts' denial of relief on this claim was contrary to, or an unreasonable application of, federal law.   Letell is not entitled to relief on this claim.

---

[36]*Letell*, 103 So.3d at 1137; St. Rec. Vol. 14 of 16, 1st Cir. Opinion, 2012-KA-0180, p. 8, 10/25/12.

### B. <u>Self-Representation</u>

Letell argues that the Louisiana First Circuit failed to consider his claim that he was denied the right to self-representation under the correct, prevailing jurisprudence in *Faretta*.   Under a broad reading, he asserts that the Court instead failed to correct the state trial court's consideration of his competence in denying his request for self-representation on November 9, 2010.   Letell argues that his mental competence to proceed to trial and assist counsel, as defined in *Drope v. Missouri*, 420 U.S. 162 (1975) was not the proper standard to assess his right to represent himself.   Instead, *Faretta* required only that he make a voluntary and intelligent waiver of his right to counsel, which he did.

In response, the State contends that the state courts' rulings were consistent with *Faretta* and its progeny, and that the trial judge had the authority under federal law to terminate Letell's self-representation due to his deliberate engaging in serious and obstructionist misconduct.

Letell raised this issue on direct appeal to the Louisiana Fifth Circuit.   The Court cited state case law for the position that the choice of self-representation must be knowing, voluntarily, clear, and unequivocal, and those that vacillate between self-representation and counsel are equivocal.   The Court reviewed the information elicited by the Trial Court from Letell in October and November, 2010, including his education and understanding of legal matters, and made note of the several incidents where Letell indicated that he would prefer to work with counsel and have counsel represent him or act as co-counsel.   Without further discussion, the Court thereafter concluded that the claim was meritless.   This was the last reasoned opinion on the issue.   *Ylst*.

The right to self-representation and waiver of counsel are mixed questions of law and fact. *Brewer v. Williams*, 430 U.S. 387, 397 & n.4, 403-404 (1977); *Miller v. Fenton*, 474 U.S. 104

(1985).    The Court must therefore determine whether the denial of relief by the state courts was

contrary to, or an unreasonable application of Supreme Court law.

"It is beyond dispute that '[t]he Sixth Amendment safeguards to an accused who faces

incarceration the right to counsel at all critical stages of the criminal process.'" *Marshall v.*

*Rodgers*, __ U.S. __, 133 S. Ct. 1446, 1449 (2013) (quoting *Iowa v. Tovar*, 541 U.S. 77, 80-81

(2004), and citing *United States v. Cronic*, 466 U.S. 648, 653-654 (1984) and *Gideon v.*

*Wainwright*, 372 U.S. 335, 344 (1963)).    A criminal defendant, however, also has the right to self-

representation to "proceed without counsel when he intelligently elects to do so."   *Faretta*, 422

U.S. at 807; *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013).

Waiver of the right to counsel must be knowing and intelligent, and the defendant must

clearly and unequivocally request self-representation.    *Id.*; *United States v. Long*, 597 F.3d 720,

723 (5th Cir. 2010).   Once a defendant <u>unequivocally</u> invokes the right of self-representation,

whether expressly or constructively, the court must hold a *Faretta* hearing to ensure that the

defendant's request to proceed without counsel is knowing and voluntary.    *See Faretta*, 422 U.S.

at 835-36; *United States v. Cano*, 519 F.3d 512, 516 (2008).    A *Faretta* warning, therefore, is

required when the defendant <u>unequivocally</u> invokes his right to proceed on his own behalf and

waives his right to counsel.    *See Cano*, 519 F.3d at 516; *see also*, *Long*, 597 F.3d at 724.

The Supreme Court has not "prescribed any formula or script to be read to a defendant who

states that he elects to proceed without counsel."    *Tovar*, 541 U.S. at 88.    The state trial court

need only be convinced that the defendant "knowingly and intelligently forgoes his right to counsel

**and that he is able and willing to abide by rules of procedure and courtroom protocol**."

(emphasis added) *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984).    The defendant "should be

made aware of the dangers and disadvantages of self-representation, so that the record will

establish that 'he knows what he is doing and his choice is made with his eyes open.'"   *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

Under the principles announced in *Faretta*, a <u>competent</u> criminal defendant has a Sixth Amendment right to represent himself at trial if he waives his right to counsel.   A trial court cannot deny the defendant's motion to proceed without counsel simply on the belief that the defendant lacks sufficient knowledge or understanding of the law.   Following this doctrine, the Supreme Court made clear that "even assuming that self-representation might pose special trial-related difficulties, 'the competence that is required of a defendant to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself.'" (emphasis in original) *Indiana v. Edwards*, 554 U.S. 164, 172 (2008) (quoting *Godinez v. Moran*, 509 U.S. 389, 399 (1993)).

However, the right to self-representation is not absolute.   The Supreme Court has held that a trial court may <u>terminate</u> the right to self-representation where the defendant fails to abide by courtroom rules and/or engages in obstructionist or disruptive conduct or by abusing the dignity of the courtroom.   *Faretta*, 422 U.S. at 834 n.46.   Under the general principle announced by the Supreme Court in *Faretta* and its progeny, the right of self-representation is limited by the trial court's responsibility to maintain order and safety and to prevent disruption and delay.   See *United States v. Long*, 597 F.3d 720, 726 (5th Cir. 2010) (upholding denial of the right to self-representation where the defendant had been disruptive in pretrial proceedings).   In keeping with this, the Fifth Circuit also has recognized that a defendant's request to represent himself at trial may be rejected if it is intended to cause delay or create some tactical advantage or if pretrial behavior suggests that the defendant intends to disrupt the trial.   *United States v. Vernier*, 381 F. App'x 325, 328 (5th Cir. 2010)   Thus, "[e]ven at the trial level, therefore, the government's

interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer."   *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 162 (2000).

To aid in this goal, a trial court can appoint stand-by counsel to assist the defendant (even over the defendant's objection), so long as stand-by counsel does not unduly impinge on the defendant's self-representation.   *Id*. at 834 n.46; *McKaskle*, 465 U.S. at 174-79.   The courts have recognized, however, that there is no constitutional right to have both counsel and to represent yourself through a "hybrid representation" scheme.   *McKaskle*, 465 U.S. at 182; *Randolph v. Cain*, 412 F. App'x 654, 658 (5th Cir. 2010).   When a defendant makes a request to act as co-counsel or some version of hybrid representation, the protections discussed in *Faretta* do not apply. *Randolph*, 412 F. App'x at 658.   "Once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced."   *McKaskle*, 465 U.S. at 168.

The Supreme Court further limited the broader *Faretta* doctrine in *Edwards* to allow for consideration of a defendant's mental competence where appropriate.   In *Edwards*, the Supreme Court noted that *Faretta* and *Godinez* focused on the ability of a competent defendant to invoke the right to waive counsel, but that neither case answered the question whether it was constitutionally fair to allow a mentally incompetent person to conduct a defense without the assistance of counsel.   *Edwards*, 554 U.S. at 171-73.   The court recognized that a defendant is competent under the standards set forth in *Drope* and *Dusky v. United States*, 362 U.S. 402 (1960), when he is able "to consult with counsel, and to assist in preparing his defense"   *Id*.; *Drope*, 420 U.S. at 171; *Cooper v. Oklahoma*, 517 U.S. 348, 364 (1996) (outlining the rights exercised by a

defendant that require his competent cognition).  However, the Court found that this was not always sufficient to assure that a defendant would receive a fair trial if he was found competent to assist under *Drope*, but lacked the capacity under a "realistic account" to assure himself a fair trial. The Supreme Court in *Edwards* recognized that "the trial judge . . . will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individual circumstances of a particular defendant."  *Edwards*, 554 U.S. at 177.  The Court authorized the trial courts to ask the question "whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so."  *Id*.

The Court therefore held "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves."  *Id*. at 178.  While the Court did not specifically define "severe mental illness" it based its reasoning on the "common sense" information provided in *amicus curiae* brief from the American Psychiatric Association which indicated that "[d]isorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety, and other common symptoms of severe mental illnesses can impair the defendant's ability to play the significantly expanded role required for self-representation even if he can play the lesser role of represented defendant."  *Edwards*, 554 U.S. at 164.

Letell argues that the state courts erred in applying the *Drope* competence standards instead of *Faretta* to deny his request for self-representation.  Although the state courts referenced his "competence," the record does not reflect that the courts invoked *Drope* or applied its standards to his self-representation issue.  To properly address this, the Court first must recognize that the doctrine provided by the Supreme Court in *Faretta* and its progeny referenced above provide the

standards under which Letell's claim was to be addressed by the state courts and this federal habeas court.  *Marshall v. Rodgers*, __ U.S. __, 133 S. Ct. 1446 (2013) ("The starting point for cases subject to § 2254(d)(1) is to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims.") (citing *Williams*, 529 U.S. at 412; *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).   While *Faretta* confirmed the right of a state criminal defendant like Letell to represent himself, the Supreme Court has since expanded the state courts' authority to decline self-representation based on a common sense and realistic competence inquiry, short of a full *Drope* analysis, to evaluate a defendant's mental ability to represent himself in light of what the state trial court perceives in the proceedings before it.  *Edwards*, 554 U.S. at 177.

In this case, the Trial Court used the phrase "not competent" several times to deny Letell's ability to represent himself.  It does not appear, however, that this was a reference to Letell's competence to proceed under the *Drope* standards.  In fact, after finding Letell competent to proceed based on the *Drope* findings of the forensic psychologist, the Trial Court assured Letell that "I was never concerned about your competence.   That was never a problem for me.   I always thought you were competent."[37]   As will be discussed later, it appears the Court's "not competent" reference related to Letell's lack of understanding of the waiver of his rights.

Nevertheless, under the Supreme Court precedent in *Edwards*, competence to represent one's self is a standard separate from the *Drope* rule.  The Trial Court would not have acted contrary to Supreme Court law if it did consider that, when Letell exhibited his inability to follow basic instructions of the Court, engaged in disruptive and dilatory behavior, which resulted in his expulsion from several hearings and trial, near-paranoid rants about conspiracies, and otherwise

---

[37]St. Rec. Vol. 10 of 16, Hearing Transcript, p. 6, 8/8/11.

manipulative behavior and abusive filings, the Trial Court was within precedential boundaries to find Letell was not mentally stable to represent himself. *See Edwards*, 554 U.S. at 164 (adopting the concept that a defendant is not competent to represent himself when he exhibits "[d]isorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety, and other common symptoms of severe mental illnesses . . .").

Thus, Letell is incorrect in his claim that the state courts' erred to the extent the courts may have considered his mental capacity as a factor in the decision to deny him the right to self-representation. Some level of mental competence is a factor allowed under Supreme Court precedent. Therefore, the state courts' reliance *vel non* on mental competence as a factor to deny his request for self-representation was neither contrary to, or an unreasonable application of, Supreme Court law.

Under a broader reading, Letell's arguments also present the larger question whether the state courts' denial of his right to self-representation otherwise was contrary to or an unreasonable application of Supreme Court law. The record demonstrates that Letell did not make an unequivocal request to proceed on his own behalf or establish a clear understanding of the waiver of the right to counsel, both findings made by the Trial Court when his self-representation was denied. Instead, as will be outlined from the record, Letell raised and withdrew his requests for self-representation and repeatedly qualified his requests with the desire to act as or have co-counsel, where he would present some issues and counsel would conduct others, including trial.

In relevant part, the state court record reflects that the state trial court appointed the public defender's office to defend Letell, and Garyland Wallis was assigned as his counsel. On July 22, 2010, Letell filed a motion seeking to appear as "co-counsel" with Wallis.[38]   In the motion, Letell

---

[38]St. Rec. Vol. 1 of 16, Motion to Appear as Co-Counsel, 7/22/10.

complained that he had been represented by several indigent defenders since arraignment, and the assigned attorneys were unfamiliar with his case.   The Trial Court summarily denied the motion on July 26, 2010.

After this, Letell filed several motions complaining about Wallis's representation and failure to file motions that Letell thought should be filed.[39]   Letell eventually withdrew one motion and some were denied by the Trial Court.[40]   The Court considered several of the motions at a hearing held on September 23, 2010.[41]   At that hearing, the Court specifically asked Letell if he intended to go forward with his motion to discharge Wallis and represent himself or if he wanted to change his mind about that.[42]   Letell responded by asking the Court, if he proceeded with counsel, whether he could also pursue his pro se motions to suppress and quash.   He asked the Court if he could "work as a team" with Wallis.[43]   Letell told the Court, "Well, I would rather have attorney to litigate my issues at hand."[44]   After advising Letell of the dangers of self-representation, the Court allowed Letell time to confer with counsel.[45]

Upon continuing with the hearing, Letell withdrew his motion accusing the prosecutor of misconduct.[46]   Letell also confirmed that he was going to proceed with Wallis as his counsel and

---

[39]St. Rec. Vol. 1 of 16, Motion for Complaint of Garyland Wallis, 9/23/10; Motion to Remove Counsel, 9/30/10, Motion to Quash Motions Filed by Counsel, 9/30/10.

[40]St. Rec. Vol. 1 of 16, Trial Court Order, 9/27/10; Trial Court Order, 10/1/10; Trial Court Order (2), 10/1/10.

[41]St. Rec. Vol. 4 of 16, Hearing Transcript (Part 1), 9/23/10; Hearing Transcript (Part 2), 9/23/10.

[42]*Id*., at p. 2.

[43]*Id*., at p. 3.

[44]*Id*., at p. 3.

[45]*Id*., at pp. 5-8.

[46]St. Rec. Vol. 4 of 16, Hearing Transcript (Part 2), p. 2, 9/23/10.

withdrew his motion for self-representation.[47]   Letell submitted another motion to appear as co-counsel on September 30, 2010, which was not addressed by the Court because it was not signed by Letell.[48]

The Court later held a hearing on October 15, 2010, to consider the multitude of pretrial motions filed by counsel and by Letell pro se, including another request to represent himself.[49] At that time, the Trial Court, in accordance with the *Faretta* doctrine,[50] questioned Letell about his education, legal studies and experience, mental health, and past treatment for depression.[51] The Court also met with Letell off record in chambers to discuss the self-representation issue, and allowed Letell to consult with counsel on the issue as well.[52]   The Court thereafter allowed Letell to represent himself "at this point" and assigned   Wallis as stand-by counsel to provide assistance if requested by Letell.[53]

As the motion hearing proceeded, the Court on at least four occasions had to instruct Letell to stop testifying and to cease arguing with one of the witnesses.[54]   As a result of the repeated delays, the Court did not complete the hearing on the motions or hear from the other witnesses waiting to testify that day.[55]

---

[47]*Id.*, at pp. 2-3, 5.

[48]St. Rec. Vol. 1 of 16, Trial Court Order, (undated).

[49]St. Rec. Vol. 2 of 16, Hearing Transcript (Part 1), p. 5, 10/15/10.

[50]*Faretta* requires that the defendant be "literate, competent, and understanding, and that he was voluntarily exercising his informed free will."   *Faretta*, 422 U.S. at 835.

[51]*Id.*, at pp. 5-11.

[52]*See* St. Rec. Vol. 2 of 16, Hearing Transcript (Part 2), p. 3, 10/15/10.

[53]St. Rec. Vol. 2 of 16, Hearing Transcript (Part 1), pp. 11, 13, 10/15/10.

[54]St. Rec. Vol. 2 of 16, Hearing Transcript (Part 2), pp. 113, 117-18, 122-23, 135, 10/15/10.

[55]*See e.g.*, *Id.*, at pp. 136, 140-41.

When the matter was called again for hearing on November 9, 2010, the Trial Court revisited the issue of Letell's self-representation.[56]  The Trial Court again questioned Letell in more detail about his education, legal experience, and court proceedings.  When the Court asked Letell if he understood that he was waiving his right to counsel, Letell did not answer the question. Instead, Letell told the Court that he chose to work on his own case, because he did not feel that he had adequate opportunity to meet with his counsel before he was sent back to jail on the parole revocation.[57]  The Court asked Letell if he was "reconsidering that decision and that you would rather be represented by an attorney in this case?"[58]  Letell responded in relevant part that "I would love to have Wallis represent me if we could sit down, work things out, and he's going to represent me and we could communicate, but I'd still like to be his co-counsel and sit by his side, if we could come to some type of agreement, but as far as up till this point, I've had to represent myself."[59]  The Court again instructed Letell that he had the right to represent himself and the Court was required by law to assure that he was making a knowing and intelligent waiver of the right to counsel.[60]  When the Court reiterated the disadvantages of representing himself, Letell in turn replied, "Well, I'd rather, if I could, I'd rather have Mr. Wallis be the trial lawyer, but I'd like to argue my issues in my motion, if that would, if we could come to some kind of agreement on that or let me be co-counsel with him to argue my issues."[61]  The Court advised Letell that the

---

[56]St. Rec. Vol. 2 of 16, Hearing Transcript (Part 1), p. 4, 11/9/10.

[57]*Id*., at p. 5.

[58]*Id*.

[59]*Id*.

[60]*Id*., at pp. 6-7.

[61]*Id*., at p. 7.

law did not allow him to act as co-counsel, and required that he either be represented or represent himself.   Letell then asked to speak to Wallis for a few minutes.[62]

After their conversation, Letell advised the Court that "[Mr. Wallis] thinks it's best I do represent myself, so, I have no other choice than keep moving on.   But far as trial, no, I'm not capable of handling a trial.   But I am capable of handling my motions and I'd like to handle my motions if possible or get another lawyer that can."[63]   After an off-the-record conference at the bench, Letell and Wallis again went off to have a private conversation, and the matter was recessed.

Later that day, the Court and Letell again engaged in discussions about his decision to represent himself, and again Letell indicated that he "would rather not do that" but that he felt compelled to do so because he wanted to "expose some things that the DA done" and needed a lawyer with whom he could communicate.[64]   Following Letell's comments, the Trial Court indicated his concern for the fairness of the proceeding and, recalling Letell's performance at the prior hearing, the Court stated: "I am now not convinced that you are competent to do that and I am going to refuse to allow you to do that because I don't think it's in your best interest, I don't think that you're competent to handle the representation in this case."[65]   The Court discussed Letell's inability to understand his constitutional rights and certain basic concepts of law and had a "lack of understanding for the process" as it related to the meaning and result of the waiver of his constitutional rights.[66]   As an example of this, the Court noted Letell's insistence that he still had a right to confront his accusers even after he entered a plea of guilty in one of his prior DWI

---

[62]*Id.*, at p. 8.

[63]*Id.*

[64]St. Rec. Vol. 2 of 16, Hearing Transcript (Part 2), p. 2, 11/9/10.

[65]*Id.*, p. 3.

[66]*Id.*, pp. 3-4.

cases.   Letell filed for review of the motion rulings made that day, but not the denial of the right to self-representation, and the writ applications were denied by the appellate court.[67]

Letell's requests for counsel were not unequivocal.   Letell also did not clearly and intelligently waive his right to counsel with his "eyes wide open," as determined by the state trial court.   *See*, *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279 (1942).   He consistently vacillated between wanting to represent himself and a desire for assistance of counsel, albeit on his own terms.   These equivocated requests did not invoke the protections under *Faretta* and did not stand as a clear expression of the right to self-representation.

It is significant to note that, when the issue was revisited by the Trial Court on November 9, 2010, the Court's inquiry into Letell's desire to represent himself again was met with waffling and hesitation to proceed without some level of assistance from counsel.   In fact, Letell's requests for dismissal and removal of counsel throughout the proceedings were predicated on his disagreement with counsel's actions and a desire to pursue issues not adopted by counsel.   Based on his persistent vacillation, and the continued desire to rely on counsel for trial and other matters, the Court reconsidered its decision and reinstated counsel.   As the Trial Court held, the *Faretta* doctrine prohibits the assignment of co-counsel or any hybrid combination of representation, like that sought by Letell.   Therefore, Letell did not make a clear and unequivocal waiver of his right.

The record considered as a whole reflects that the state courts' denial of Letell's request for self-representation was based on the reasoned conclusion that Letell did not truly understand the meaning of a waiver of a constitutional right and was unwilling to relinquish his reliance on

---

[67]*See e.g.*, St. Rec. Vol. 3 of 16, Copy of 1st Cir. Writ Application, dated 11/23/10; 1st Cir. Order, 2010-KW-2187; 2/9/11; 1st Cir. Writ Application, dated 11/12/10; 1st Cir. Order, 2010-KW-2073, 1/14/11; *see also*, *Letell*, 103 So.3d at 1144 n.6; St. Rec. Vol. 14 of 16, 1st Cir. Opinion, 2012-KA-0180, p. 19 n.6, 10/25/12.

the assistance of counsel.   Although perhaps not artfully stated by the Trial Court, this conclusion was consistent with the dictates of *Faretta* and related Supreme Court precedent.

In addition, the Trial Court's decision to reconsider or retract permission for self-representation on November 9, 2010, comported with the dictates of *Faretta* in other ways.   As cited above, the Supreme Court in *Faretta* recognized that a trial judge may terminate self-representation by a defendant who fails to comply with the court's rules or deliberately engages in dilatory and disruptive behavior.   *See Faretta*, 422 U.S. at 834 n.46; *Long*, 597 F.3d at 726.

The record indicates that Letell caused delay and failed to comply with the directives of the Trial Court at the October 15, 2010, hearing where Letell was allowed to represent himself. The Trial Court on four occasion reprimanded Letell for arguing with a witness and testifying rather than questioning the witnesses.   Letell's actions at the hearing caused delays which resulted in the Court having to recall witnesses for a later date.

Perhaps Letell's disruptive behavior is most relevant in considering the denial of Letell's requests after November 9, 2010, to remove his counsel and allow him to proceed on his own behalf.   The Court recognizes that there is no clearly established rule from the Supreme Court that would entitle a defendant to reassert the right to self-representation, much less any guidance on the ability to reassert after the right is denied under *Faretta* or abandoned through acquiescence to the appointment of counsel.   Nevertheless, for the sake of thoroughness, a review of the record reflects that Letell's actions before the state trial court amply supported the revocation of the right to self-representation and the repeated refusal to allow him to do so after November 9, 2010, under the foregoing precedent, including *Faretta*, *McKaskle*, and *Edwards*.

The record establishes that, after November 9, 2010, Letell continued to file motions challenging the actions of the prosecution, his counsel and the Trial Court, including allegations

of conspiracy, and all of motions were either withdrawn by Letell or denied by the state court.[68]
The motions ultimately were denied by the Court in due course.[69]   Those related to his additional
requests to represent himself were denied with reference to the reasons already given by the Court
in the prior hearings.   Nevertheless, Letell's disruptive behavior continued throughout the pretrial
hearings held by the Trial Court.

At a hearing held May 2, 2011, the Trial Court addressed another of Letell's motions to
represent himself and remove his counsel.   Wallis advised the Court that Letell was avoiding his
attempts to meet with him and chose instead to remain at a state prison facility rather than return
to Lafourche Parish Jail.[70]   Wallis further outlined the persistent and disruptive pro se motions
filed by Letell and the derogatory allegations against him which were jeopardizing counsel's
professional judgment.[71]   The Trial Court responded that it felt that Letell was "play[ing] games"
with the Court through his repeated requests to represent himself, especially in light of his
admission that he did not want to go to trial without counsel.[72]   The Court admonished both Wallis
and Letell that counsel was in charge of the case and that Letell was not representing himself.[73]
Letell continued to interrupt and demand that he be allowed to speak to the Court, and the Court
responded: "The problem in this court . . . is that this court runs the way that it's supposed to and

---

[68]*See e.g.*, St. Rec. Vol. 3 of 16, Motion to Force Counsel to Adopt, 12/2/10; Motion for Closed Hearing,
dated 12/3/10; Letter to Court, 11/30/10; Motion to Advise, 12/10/10; St. Rec. Vol. 5 of 16, Motion to Advise the
Court, 3/17/11; Motion to Withdraw Counsel of Record, 4/21/11; Motion for Request, 4/21/11; Motion to Proceed as
Counsel Pro Se, 4/21/11; Writ of Habeas Corpus, 5/27/11.

[69]*See e.g.*, St. Rec. Vol. 5 of 16, Trial Court Order (1), 4/26/11; Trial Court Order (2), 4/21/11; Trial Court
Order, 4/26/11; Trial Court Order, 5/27/11.

[70]St. Rec. Vol. 2 of 16, Hearing Transcript, p. 8, 5/2/11.

[71]*Id.*

[72]*Id.*, at p. 10.

[73]*Id.*, at pp. 11-13.

you're not driving the train.   And that's what you don't understand, and until you get that through

your head then you're going to have a difficult time in this courtroom.   What I'm telling you is

that you're not in charge and until you figure that out, you're going to have a hard time, Mr.

Letell."[74]   Undaunted, Letell continued to ramble and rant out loud about perjury and prejudice

in spite of the Court's efforts to quell his concerns.[75]   The Court finally had to end the hearing.[76]

Letell continued with his pro se pleadings challenging the actions of his counsel, the Court

and the prosecution.[77]   The Trial Court denied the motions requiring a ruling.[78]

At the continued suppression hearing held on July 12, 2011, the Trial Court had to

admonish and quiet Letell on at least eight occasions.   The Court had to remind Letell that he was

represented by counsel and would not be addressed by the Court.[79]   The Court instructed Letell

not to speak out while witnesses were testifying.[80]   At the completion of the questioning of one

witness, including direct by the State, cross-examination by Wallis, and redirect, Letell insisted

through counsel that he be allowed to ask more questions.[81]   The Trial Court allowed Wallis

fifteen minutes to confer with Letell and allowed Wallis to ask additional questions, all of which

were found to be repetitive of matters addressed in the October 15, 2010 hearing.   During that

additional questioning, the Court had to caution Letell to allow his counsel to conduct the

---

[74]*Id.*, at p. 14.

[75]*Id.*, at pp. 14-18.

[76]*Id.*, at pp. 18 and 22.

[77]St. Rec. Vol. 6 of 16, Motion to Withdraw, 6/13/11; Motion to Address the Court, 6/30/11.

[78]St. Rec. Vol. 6 of 16, Trial Court Order, 6/30/11.

[79]St. Rec. Vol. 3 of 16, Hearing Transcript, p. 13, 7/12/11.

[80]*Id.*, at pp. 61-62.

[81]*Id.*, at p. 98.

questioning without interruption.[82]   The Court had to instruct Letell several times to sit down

which Letell did not immediately do.[83]   At one point, the Court threatened to remove Letell from

the courtroom because of his disruptive and "disrespectful" behavior.[84]   Letell also asked that his

counsel be relieved from the case because he was not asking the questions Letell wanted asked.[85]

As counsel conveyed this to the Court, the Court was compelled to admonish Letell several times

to stop talking if he wanted to stay in the courtroom.[86]   When Letell continued, the Court ordered

that he be removed from the courtroom due to his interference with the proceedings.[87]   Letell still

continued to address the Court and left only under threat of contempt.[88]   The Court proceeded

with the hearing without further interruption.

     When the matter continued the next day, July 13, 2011, Letell was present in the courtroom

and again urged that his counsel be withdrawn so he could represent himself and the prosecutor

and judge be recused.[89]   The Court denied the motions noting that they were more of Letell's

gamesmanship, where he filed motions to recuse and remove each time someone did something

with which he did not agree.[90]   With regard to the motion for self-representation, the Court

reiterated that it had already denied the request after finding that Letell was not competent and that

---

[82]*Id.*, at pp.108-09.

[83]*Id.*, at pp. 109-10, 114.

[84]*Id.*, at pp. 114-15.

[85]*Id.*, at pp. 116-17.

[86]*Id.*, at p. 117.

[87]*Id.*, at p. 118.

[88]*Id.*, at p. 118-19.

[89]St. Rec. Vol. 4 of 16, Hearing Transcript, pp. 5-6, 7/13/11; St. Rec. Vol. 6 of 16, Motion for Self-Representation, 7/13/11; Motion to Dismiss Counsel, 7/13/11.

[90]*Id.*, at pp. 8-9; St. Rec. Vol. 6 of 16, Trial Court Order, 7/13/11; Trial Court Order (2), 7/13/11.

he wanted to represent himself at motions and not trial, which meant he was not intentionally waiving the right to counsel.[91]   The Court again advised Letell that he does not have a basic understanding of his constitutional rights or the legal proceedings and would not be allowed to represent himself.   The Court instructed that Letell should cooperate with his counsel for the benefit of his defense and would be removed if he was disruptive.   In spite of the Court's clear instructions, Letell made repeated attempts to talk to the Court to no avail.[92]

Later in the hearing, Letell interrupted a witness's testimony and was instructed by the Bailiff to have a seat.[93]   He tried again to interrupt the State's argument to the Court after the testimony.[94]   He also interrupted his counsel's efforts to argue the motion and was again instructed by the Court to sit down and be quiet.[95]   Letell interjected several more times during argument and during the Court's ruling and discussions with counsel.[96]   He ranted on about bias and prejudice and his knowledge of the law until the Court had to break for lunch.[97]

Letell continued his complaints when court resumed after lunch until the Court cut him off to proceed with the hearing.[98]   Soon, Letell tried to object to the veracity of a witness's testimony,

---

[91]*Id.*, at pp. 9-10.

[92]*Id.*, at pp. 13-15.

[93]*Id.*, at pp. 40-41.

[94]*Id.*, at pp. 58, 64.

[95]*Id.*, at p. 61.

[96]*Id.*, at pp. 66, 75, 76, 78.

[97]*Id.*, at pp. 78-81.

[98]*Id.*, at pp. 81-82.

and when he refused to be quiet and heed the Court's warning, the Court had him removed from the courtroom.[99]

When Letell later was called to testify at the hearing, his responses to questions posed by his counsel and the prosecutor continually were challenged as argumentative and beyond the scope of the questions.[100]   The Trial Court allowed him to remain in the courtroom although Letell continued to interject and disobey the Court's directives to be quiet.[101]

After the hearing, on July 15, 2011, Wallis moved to convene a sanity commission to evaluate Letell, which the Trial Court granted for purposes of a show cause hearing on the necessity to do so.[102]   The report issued by Rafael F. Salcedo, Ph.D., diagnosed Letell as having severe alcohol abuse and dependence, currently in institutional remission, and with a personality disorder, not otherwise specified, with narcissistic features.   With respect to the latter diagnosis, Dr. Salcedo concluded that "[w]ith regard to assisting counsel, Mr. Letell did not appear to be suffering from a psychiatric disorder which would impair his ability to assist counsel in his defense. **The narcissistic elements of his personality disorder may make it difficult to interact with him** . . ." although Letell was "capable of assisting his attorney **if he so desires**."[103] (emphasis added).

At the hearing on August 8, 2011, the Trial Court declined to appoint a sanity commission based on Dr. Salcedo's competence findings.[104]   During the hearing, Letell requested that he be

---

[99]*Id.*, at pp. 97-98.

[100]*See e.g.*, *Id.*, at pp. 121, 132.

[101]*Id.*, at 136, 140-41, 143-44, 148, 152-53, 155-159, 161.

[102]St. Rec. Vol. 6 of 16, Motion for Sanity Commission, 7/15/11; Trial Court Order, 7/15/11.

[103]St. Rec. Vol. 8 of 16, Dr. Salcedo's Report, 8/4/11.

[104]St. Rec. Vol. 6 of 16, Trial Court Order, 8/8/11; St. Rec. Vol. 10 of 16, Hearing Transcript, 8/8/11.

allowed to file certain pleadings, some of which his counsel did not want to file.[105]   Letell thereafter moved to waive his right to counsel and represent himself under *Faretta* since he was found competent to proceed.[106]   Letell then asked for counsel "just to be my assistant."[107]   The Court responded that his competence to proceed (under *Drope*) was not an issue, but denied the motion.[108]

Letell thereafter renewed his request to waive counsel based on his belief that counsel was not working in his best interest, which the Court denied referencing its prior reasons.[109]   He continued to write to the court challenging the actions of his counsel.[110]   Even then, his complaints included proposals that counsel remain as "his assistant."[111]

Even at trial, Letell interrupted counsel's questioning of witnesses and interjected his opinions when the Court asked him to stop.[112]   Letell made many of his disruptive comments, including threats to fire his attorney, in the presence of the jury.[113]   Outside of the presence of the jury, the Court addressed Letell about his behavior and after lengthy discussions, the Court decided to allow Letell to remain in the courtroom.[114]

---

[105]St. Rec. Vol. 10 of 16, Hearing Transcript, pp. 4-5, 8/8/11.

[106]*Id.*, at p. 6

[107]*Id.*

[108]*Id.*, at p. 7.

[109]St. Rec. Vol. 6 of 16, Motion to Waive Right to Counsel, 8/9/11; Trial Court Order, 8/10/11.

[110]*See e.g.*, St. Rec. Vol. 7 of 16, Motion to Discuss, 8/17/11; St. Rec. Vol. 8 of 16, Motion to Dismiss Counsel, 9/2/11; Trial Court Order, 9/8/11; Motion to Withdraw as Counsel of Record, 9/12/11; Trial Court Order, 9/12/11.

[111]*Id.*

[112]St. Rec. Vol. 11 of 16, Trial Transcript (continued), pp. 276, 278, 283, 294, 297, 298-299, 300-05.

[113]*See e.g.*, *Id.*, pp. 297, 299.

[114]*Id.*, pp. 300-05.

During trial the next day, the Court gave warnings to Letell about his outbursts and interruptions including matters such as falsified documents and perjury.[115]   Because of his failure to heed the Court's warnings, Letell was ejected.[116]   After hearing argument away from the jury, the Court denied Wallis's motion for mistrial based on Letell's behavior being prejudicial and his ejection from the courtroom.[117]

After the lunch recess, Letell was allowed to return to the trial subject to the Court's warnings.[118]   It did not take long for Letell to begin interjecting comments and interrupting the questioning of witnesses.[119]   The Court repeatedly warned Letell not to speak out loud in a manner that could be heard by the jury and with the purpose of imparting information to the jury.[120]   Even his own counsel made requests for the Court to quiet Letell.[121]   In spite of this, Letell remained in the courtroom for the remainder of the day.

On the final day of the trial, the defense rested without presenting any evidence.[122]   After closing arguments by the State and the defense, the State indicated that they would present rebuttal argument.[123]   At that point, Letell interrupted to announce that he wanted to testify, and briefly

---

[115]St. Rec. Vol. 12 of 16, Trial Transcript, pp. 31-32, 74-76, 9/15/11.

[116]*Id.*, at pp. 75-76.

[117]*Id.*, at pp. 76-80.

[118]*Id.*, at p. 140.

[119]*Id.*, at pp. 166-167, 170-171; 183; 200.

[120]*Id.*, at pp. 171, 179-80; 192-93; St. Rec. Vol. 13 of 16, Trial Transcript (continued), pp. 206, 253-55, 256, 9/15/11.

[121]*Id.*, at pp. 177-78.

[122]St. Rec. Vol. 13 of 16, Trial Transcript, p. 6, 9/16/11.

[123]*Id.*, at p. 42.

argued with the Court before stopping.[124]   Letell again interjected comments at the end of the State's rebuttal and was quieted by the Court.[125]

Based on the foregoing, to paraphrase Dr. Salcedo, there is no doubt that Letell suffered from a personality disorder and exhibited narcissistic tendencies which made it difficult to work with him.   His disruptive behavior was persistent and often prevailed over the importance of the matters before the Court, including his own trial.   "The right to self-representation is not a license to abuse the dignity of the courtroom."   (citation omitted) *Faretta*, 422 U.S. at 834 n.46.   The state courts were justified in the denial of Letell's requests to represent himself, and he has not shown a basis for federal habeas relief in those rulings.

For all of the foregoing reasons, even though he was competent to assist counsel under *Drope*, the state courts' denial of his request for self-representation, whether based on his mental instability under *Edwards*, his equivocated requests and involuntary waivers under *Faretta*, or his disruptive and detrimental behavior and unwillingness to abide by the rules of courtroom decorum under *Faretta* and *McKaskle*, was not contrary to or an unreasonable application of Supreme Court law.   Letell is not entitled to relief on this issue.

### C.   <u>Right to Testify</u>

Letell alleges that the Louisiana First Circuit unreasonably applied Supreme Court precedent on the issue of the State's failure to allow petitioner to testify.   Specifically, Letell asserts that the Louisiana First Circuit failed to consider the right to testify as fundamental and instead treated it as a procedural issue under state law.   Under a broad reading, he further alleges that he asserted his right to testify before trial, and that this fact was known by his counsel.   Letell

---

[124]*Id.*, at p. 43.

[125]*Id.*, at p. 44.

alleges therefore that the state appellate court did not identify the prevailing Supreme Court law on the issue and its decision was contrary to his rights guaranteed under the Constitution.

Letell asserted on direct appeal that the Trial Court erred in denying him the right to testify in part because he was not in the courtroom when the evidence ended.   The Louisiana First Circuit determined that Letell was in the courtroom when the defense announced it would not present any evidence, and he waited until just before rebuttal arguments from the State to announce that he wanted to testify.   The Court outlined the normal order of the trial under La. Code Crim. P. art. 765(5), which provided that evidence was to be taken before closing arguments.   The court denied relief finding no error in the Trial Court's denial of the request to testify made by Letell after the close of evidence.

When Letell attempted to raise this claim and a similar claim of ineffective assistance of counsel on post-conviction review,[126] each level of the state courts found that the claims were barred from review as repetitive of matters addressed on direct appeal under La. Code Crim. P. art. 930.4(A).[127]

The determination of whether a defendant's constitutional right to testify was infringed upon by a court or prosecutor is a mixed question of law and fact.   *United States v. Stark*, 507

---

[126]In this federal petition, Letell has not raised a claim of ineffective assistance of counsel related to his right to testify.  Any such claim would be considered under the standards of *Strickland*, addressed later in this opinion.  *See*, *Nix*, 475 U.S. at 157 (applying *Strickland* to claim that counsel denied petitioner the right to testify). Nevertheless, a bare and conclusory assertion of the denial of the right to testify by counsel is insufficient to establish ineffective assistance under *Strickland*.  *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999) (citing *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991)).

[127]Under Louisiana law, La. Code Crim. P. art. 930.4(A) precludes post-conviction review of claims already "fully litigated" on direct appeal.   *Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994).   This rule presumes that the claims have been fully reviewed by the state appellate court on direct appeal and by the Louisiana Supreme Court and need not be considered again on post-conviction application.  *Id*.  However, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits."   *Id*.   For this reason, the bar does not preclude habeas review of claims like petitioner's that were considered on direct appeal.   This court simply "look[s]-through" the ruling on collateral review and considers only the direct appeal proceeding.  *Id*., at 1582-83. Thus, the Court is not precluded from review of the merits of Letell's claims reviewed on direct appeal even though the state courts declined to address them again on post-conviction review.

F.3d 512, 516 (7th Cir. 2007).   The Court must consider whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court law.

A criminal defendant has a fundamental right to testify in his own defense.   *Rock v. Arkansas*, 483 U.S. 44, 50-53 (1987).   The right to testify "is one of the rights that are essential to due process of law in a fair adversary process."   *Id.* at 51 (citation and quotation marks omitted). This right, however, is not absolute.   It is limited to the right to present relevant testimony, and must "'bow to accommodate other legitimate interests in the criminal trial process.'"   *Rock*, 483 U.S. at 55-56; *Chambers v. Mississippi*, 410 U.S. 284, 295 & 302 (1973) ("In the exercise of [the right to present witnesses in his own defense], the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.")   Thus, the untimely assertion of a right under the established procedural rules will act as a forfeiture of the right.   *See United States v. Olano*, 507 U.S. 725, 733 (1993) (comparing forfeiture and waiver of a constitutional right).

As a result, state and federal lawmakers have broad latitude under the Constitution to establish rules governing the order of trials, including the exclusion of evidence and testimony. *United States v. Scheffer*, 523 U.S. 303, 308 (1998).   These rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve."   *Rock*, 483 U.S. at 56; accord, *Michigan v. Lucas*, 500 U.S. 145, 151 (1991).

In Letell's case, on the morning of the third day of trial, the Trial Court made the following statement: "The record should reflect that all members of the jury are present, the defendant is present with counsel, all counsel are present."[128]   The State announced that it was resting its

---

[128]St. Rec. Vol. 13 of 16, Trial Transcript, p. 5, 9/16/11.   As outlined previously, Letell was also present in

case.[129]   The Trial Court then asked defense counsel while Letell was in the courtroom, "Mr. Wallis does the defense wish to present any evidence."[130]   The response from counsel was, "No, sir, your Honor.   We do not."

The State gave its closing arguments, as did the defense.   Thereafter, Letell made his first mention in the entire trial record of his desire to testify at trial as the State was preparing for its rebuttal closing argument.[131]   The Trial Court did not address the request except to instruct Letell to sit down and remain silent.

As outlined above, the Louisiana First Circuit determined on direct appeal that Letell was in the courtroom when evidence closed, and Letell's request was untimely made.   The record supports the state court's conclusion that Letell was present in the courtroom at the close of evidence when his counsel announced that no evidence would be presented by the defense.   While Letell's silence at that time does not clearly indicate a waiver of his right to testify, it is significant to note that Letell had no problem expressing his opinion and urging his rights throughout the balance of the three days of trial and chose to remain silent at that time.   Letell also has made no showing that the Court or his counsel knew of his desire to testify and prevented him from asserting the right.

Nevertheless, Supreme Court precedent requires this Court to consider whether Letell asserted his right to testify within the parameters of the state procedural rules he was required to follow.   This court must defer and respect the state courts' consideration and application of state law to address Letell's claim.   *See Bradshaw v. Richey*, 564 U.S. 74, 76 (2005) ("A state court's

---

the courtroom at the end of the prior day's testimony.

[129]*Id.*, at p. 5.

[130]*Id.*, at p. 6.

[131]*Id.*, at p. 43.

interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus").   There is no argument or suggestion before the Court that La. Code Crim. P. art. 765(5) was arbitrary or served anything other than the legitimate purpose of governing the order of the trial.   Letell failed to comply with that rule and assert his right in a timely manner before the close of evidence.   His failure to do so acted to forfeit the right under the Supreme Court precedent cited above.

For the foregoing reasons, Letell has failed to establish that the state courts' denial of relief on this issue, was contrary to or an unreasonable application of Supreme Court law.   He is not entitled to relief on this issue.

### D.   <u>Conflict of Interest</u>

Letell alleges that the Louisiana First Circuit failed to apply the prevailing and controlling principles of the attorney conflict of interest doctrine to find that the Trial Court did not err in denying the motion to dismiss his counsel.   The State argues that Letell has failed to articulate a particular conflict and that the Louisiana First Circuit reasonably concluded that the filing of the disciplinary complaint did not create a conflict between Letell and his counsel under prevailing rule of professionalism.

Letell's appointed counsel raised this issue on direct appeal to the Louisiana First Circuit. Counsel argued that the filing of the complaint against Wallis created a conflict of interest and the Trial Court erred when it denied Wallis's motion to withdraw.   The Court reviewed Rule 1.7 of the Rules of Professional Conduct as adopted by the Louisiana Supreme Court and the Louisiana Bar Association.   The Court also reviewed the transcript of the hearing held on September 13, 2011, on the motion to withdraw and the Trial Court's reasons for denying the motion.   The Court

concluded that Letell failed to meet his burden of proof under Louisiana law to establish a basis for counsel's disqualification, and that the filing of the complaint did not create a conflict.

To the extent Letell requests this federal habeas court re-assess the state courts' application of its rules of professional conduct, he has failed to state a cognizable habeas claim.   This federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."   *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review). Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do <u>not</u> review questions of state law.   *Estelle*, 502 U.S. at 67-68; *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992).

Instead, the Supreme Court has made clear that claims regarding the effect of ethical violations by an attorney, other than conflicting or multiple representations, are to be addressed under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984) regarding ineffective assistance of counsel under the Sixth Amendment.   *See Mickens v. Taylor*, 535 U.S. 162, 176 (2002).   Under the *Strickland* standard, breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel.   *Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *Beets v. Scott*, 65 F.3d 1258, 1265-66 (5th Cir. 1995).   A petitioner instead must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Strickland*, 466 U.S. at 694.

In *Strickland*, the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and

prejudice therefrom.  *See Strickland*, 466 U.S. at 697.   The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).   In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.   *Amos*, 61 F.3d at 348.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).   "The defendant must show that counsel's representation fell below an objective standard of reasonableness."   *Strickland*, 466 U.S. at 687-88.   The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.   *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).   The reviewing court must "judge . . .   counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."   *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).   Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.   *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689).   "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."   *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689).   As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.   *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless

it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard. *Cullen*, 563 U.S. at 190.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).

The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

On September 12, 2011, two days prior to trial, Wallis filed a motion seeking to withdraw as counsel of record because Letell had filed a complaint against him with the Louisiana Attorney Disciplinary Board alleging ineffective assistance of counsel.[132]   At a hearing held on September 13, 2011, upon questioning by Wallis, Letell testified that the "ineffective assistance" was based on the following:[133]  "Lack of communication, failure to perform your duties in an adequate way, fail to argue my issues in not one issue in any of my motions to suppress."   Letell also testified that his claim of ineffective assistance included his assertion that counsel was involved in a conspiracy to convict him and to steal his papers when he was removed from the courtroom.[134]

The latter proposition arose from an incident when, after being removed from the courtroom at a prior hearing for being disruptive, Letell's papers were sent to him and he claimed that unspecified papers were missing, although Letell admitted they were not taken by his counsel.[135]   The conspiracy allegation came from his claims that counsel kept having him transferred to the local jail for hearings and he had turned over Letell's papers and letters to another attorney in connection with the motion to recuse the trial judge.[136]   Letell stated that he had reached an "assumption" that Wallis would not represent him to the best of his ability.   After reviewing the history of the case and finding that counsel was performing in a professional manner,

---

[132]St. Rec. Vol. 8 of 16, Motion to Withdraw as Counsel of Record, 9/12/11.

[133]St. Rec. Vol. 9 of 16, Hearing Transcript, p. 7, 9/13/11.

[134]*Id.*, at pp. 7-8.

[135]*Id.*, at p. 10.

[136]*Id.*, at p.8.

the Trial Court denied the motion.   This was followed by the denial of relief on direct appeal by the Louisiana First Circuit and on review in the Louisiana Supreme Court.

Each alleged violation or point of ineffective assistance addressed in the motion occurred in the pretrial stages of Letell's case.   Letell himself acknowledged that his claims of conspiracy were based on assumptions not fact or actual deficient performance related to his case.   He simply disagreed with Wallis's strategic choices and decisions not to pursue every issue that Letell thought should be addressed.   Letell's generalized claims remain wholly unsupported and conclusory which is not sufficient to establish a deficiency in counsel's performance.   *Moawad*, 143 F.3d at 948; *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").   Wallis was under no obligation to pursue those legal issues that he determined to be futile or meritless, and Letell has not shown that any issue rejected by Wallis would have been successful or changed the outcome of his case.   *See Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *see also*, *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections."); *see also*, *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).

Letell has never established that any of Wallis's pretrial conduct amounted to constitutionally deficient performance during the trial or prejudiced the ultimate outcome of his case.   Without this, he has not established a denial of effective assistance of counsel under *Strickland*.   The record demonstrates that Wallis was well-prepared and effectively challenged the State's case during pretrial proceedings and at trial, which is ultimately required by the United

States Constitution to avoid prejudice to the defendant in a criminal trial.  *See United States v. Cronic*, 466 U.S. 648, 658-59 (1984).   Letell's conclusory claim that Wallis engaged in ethical violations does not amount to a circumstance of the magnitude where the court can assume or even find prejudice.  *Id*.; *Mickens*, 535 U.S. at 162.

The state court's denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.   Letell is not entitled to relief on this claim.

## VI.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Letell's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[137]

New Orleans, Louisiana, this 8th day of June, 2016.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[137]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

46